UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JAMES ELMER SHAW,<br><br>    Plaintiff,<br><br>vs.<br><br>**TROY PONTO**, ASSOCIATE WARDEN, INDIVIDUAL AND OFFICIAL CAPACITY; **AL MADSON**, UNIT MANAGER, INDIVIDUAL AND OFFICIAL CAPACITY; **SAM BADURE**, UNIT MANAGER, INDIVIDUAL AND OFFICIAL CAPACITY; **DERICK BIEBER**, UNIT MANAGER, INDIVIDUAL AND OFFICIAL CAPACITY; **JACOB GLASIER**, UNIT COORDINATOR, INDIVIDUAL AND OFFICIAL CAPACITY; **DR. MARY CARPENTER**, M.D. (HEALTH SERVICES), INDIVIDUAL AND OFFICIAL CAPACITY; **DR. EUGENE REGIER**, MD, INDIVIDUAL AND OFFICIAL CAPACITY; **HEATHER BOWERS, RN** (HEATH SERVICES), INDIVIDUAL AND OFFICIAL CAPACITY; **AUDREY SHEDD**, HEAD REGISTERED NURSE, INDIVIDUAL AND OFFICIAL CAPACITY;<br>    Defendants. | 4:15-CV-04121-KES<br><br>ORDER<br><br>MOTION TO COMPLEL DISCOVERY [DOCKET 79] |

## INTRODUCTION

This matter is before the court on plaintiff James Elmer Shaw's *pro se* fourth amended complaint pursuant to 42 U.S.C. § 1983, filed September 12, 2016. See Docket No. 41.

The pending matter was referred to this magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and the April 13, 2017 order of the Honorable Karen E. Schreier, district judge. The court has reviewed Mr. Shaw's motion to compel along with his supporting documents, and the defendants' responsive filings.

**BACKGROUND**

**A.  Mr. Shaw's Claims.**

As explained above, Mr. Shaw has filed a fourth amended complaint. This is the result of his previous complaints being screened twice; once by this court and once by the district court. See Docket Nos. 14 and 24. As a result, several parties Mr. Shaw originally named and several of the claims he originally articulated are no longer a part of this lawsuit. The court explains his remaining claims here in a greatly abbreviated form. Mr. Shaw was, at the start of this lawsuit, incarcerated at the South Dakota State Penitentiary. Docket 41 at ¶ 3. In Count One, Mr. Shaw alleges deliberate indifference to his serious medical needs. Beginning in 2004, he complained of knee pain, first in the right knee and eventually in the left knee. Id., ¶¶ 18, 60. He had surgery on his right knee in 2013, but was told that by then the damage was too great and beyond repair. Id. at ¶¶ 52-53. Mr. Shaw had surgery on his left knee on March 9, 2015, but reconstruction of the ACL was impossible due to the delay. Dr. Kalo told Mr. Shaw he would "have to live with the pain." Id. at ¶ 65. He believes the medical care he has received for his knee problems has been untimely and inadequate, and that the delay and inadequacy has caused unnecessary pain and suffering, amounting to deliberate indifference to his serious medical needs. Id. at ¶¶ 191-199.

Mr. Shaw also alleges that as a result of untimely and inadequate medical care for his knees, he now suffers from back problems, which he alleges the defendants also treat with deliberate indifference. Id. at ¶ 193. He asks the court to enter an order commanding the defendants to provide him with a CAT scan of his lower back, a neurological consultation, high quality prosthetics and shoes as deemed necessary by outside providers, in addition to compensatory damages for a refund of all co-pays he has paid to prison health services since 2004, his pain and suffering in the amount of at least $350.00 per day from May, 2008 to the present, plus punitive damages in the amount of $250,000 against each named defendant. Id. at pp. 25-26. Mr. Shaw requests a jury trial.

In Count Two, Mr. Shaw alleges the defendants interfered with his constitutional right to receive mail. Docket 41, ¶¶ 161-175, 200-206. Specifically, Mr. Shaw alleges the medical records clerk told him he could review his medical records but that some records (utilization management, mental health, and outside provider records) would be withheld. Id., ¶ 162. Mr. Shaw alleges his inability to review these records prevents him from being able to determine why he has not received treatment recommended by his outside medical providers. Id. at ¶ 163. He also alleges he has not been allowed to review his records because he does not have enough money to do so. Id. at ¶ 165. He alleges he received some but not all outside medical records he requested from CORE Orthopedics. Id. at ¶ 171. Because Mr. Shaw has not been allowed access to records from outside medical providers, he believes mail from outside consultants is being confiscated. Id. at ¶¶ 174-175.

In Count Three, Mr. Shaw alleges a claim for retaliation. Docket 41, ¶¶ 176-190; 207-214. Mr. Shaw alleges after he initiated this lawsuit, the defendants took adverse action against him that would chill a person of ordinary firmness from continuing their protected activity. Id. at ¶ 210. Namely, the defendants searched Mr. Shaw's cell and placed him in the special housing unit (the "SHU") without cause. Mr. Shaw alleges the defendants seized and failed to return his property, including his legal materials. Id. at ¶ 212.

**B.     The Defendants Named in Mr. Shaw's Fourth Amended Complaint**

In his fourth amended complaint, Mr. Shaw named nine defendants, falling into two basic categories: Mr. Shaw's institutional medical providers and persons within the SDSP who hold supervisory positions. They are as follows:

| Supervisory defendants: | Medical defendants: |
|---|---|
| Troy Ponto—Associate Warden | Heather Bower, PAC—Dept. of Health Svcs. |
| Al Madsen—Unit Manager | Mary Carpenter, MD—Medical Director |
| Sam Badure--Unit Manager | E.R. Regier, M.D.—Dept. of Health Svcs. |
| Derrick Bieber—Unit Manager | Audry Shedd, R.N.—Dept. of Health Svcs. |
| Jacob Glasier—Unit Coordinator | |

**C.     The Defendants' Motion For A Protective Order And the District Court's January 13, 2017, Order**

On December 2, 2016, the defendants moved for a protective order/to stay discovery pending the resolution of their anticipated motion for summary judgment based upon the doctrine of qualified immunity. Docket 44. Mr. Shaw resisted the motion. Docket 47. Qualified immunity protects government officials from liability and from having to defend themselves in a civil suit if the conduct of the officials "does not violate clearly established statutory or constitutional rights." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is immunity from suit, not just a defense to

4

liability at trial. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Therefore, the Supreme Court has "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 536 (1991). Only if the plaintiff's claims survive a dispositive motion on the issue of qualified immunity will the plaintiff "be entitled to some discovery." Crawford-El v. Britton, 523 U.S. 574, 598 (1998). Even then, the Court has pointed out that FED. R. CIV. P. 26 "vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." Id.

Ultimately, in this case, the district court granted the defendants' motion for a protective order/to stay discovery, with a very narrow exception. Docket 62. Specifically, the district court ordered the defendants to produce administrative records and emails pertaining to Mr. Shaw's medical treatment and Mr. Shaw's medical records. Id. at p. 2. This very narrow category of documents, the district court reasoned, was necessary to determine the qualified immunity issue. Id. Otherwise, the defendants' motion for a protective order/to stay discovery was granted. Id.

**D.   Mr. Shaw's Motion to Compel**

Mr. Shaw asserts the defendants did not fully comply with the district court's January 31, 2017, discovery order. Mr. Shaw explains he believes the defendants construed the district court's order too narrowly and that there are several categories of documents he (Mr. Shaw) requested in his original discovery requests which fall within the category of documents the court

5

ordered the defendants to produce, but which they have not yet produced. Mr. Shaw has specified these documents in Docket 80-9 as those which he both highlighted and underlined. They are as follows:

- Request for Production No. 1 (all correctional health medical records from 2004 -2017);

- Request for Production No. 2 (all outside medical records from 2004-2017);

- Request for Production No. 3 (all informal resolution requests & responses; all administrative remedy requests & responses; all appeal from administrative remedy responses & responses, regarding all of Mr. Shaw's claims from 2004-2017);

- Request for Production No. 5 (copies of all emails or other written communication between Mr. Shaw & defendants or any other person that concerns or mentions Mr. Shaw, his medical conditions, his mail, the seizure of his property, or his transfers, including but not limited to (a) emails regarding all IRR and administrative remedies from 2004-2017; (b) emails between CHS and Orthopedic Institute regarding Dr. Hermanson appointment on May 5, 2008; (c) emails between Dr. Zoellner and CHS between August 11, 2009 and October 9, 2009; (d) emails between CHS and CORE Orthopedics regarding Mr. Shaw's lower back and knees and surgeries between 2012-2017; (e) emails between CHS and Avera Interventional Pain Center regarding Mr. Shaw's visits with Dr. Lockwood in 2015-2016; (f) emails between CHS and the Orthotic & Prosthetic Specialties in regard to Mr. Shaw's visits there in 2015-2016; (g) emails between unit coordinator Glaser, Case Manager Hagen, Unit Manager Badure, Unit Manager Madsen, Associate Warden Ponto, and CHS regarding Mr. Shaw's time in Jameson Annex from March 2015, through April, 2015; (h) emails between unit coordinator Burggraff, unit manager Woodward, Unit Manager Badure, Unit Manager Madsen, Associate Warden Ponto and CHS between March 15, 2016, and April 1, 2016; (i) emails between unit staff in East Hall and CHS from April, 2015, through January, 2017, regarding Mr. Shaw; (j) emails between CHS and Associate Warden Ponto from November 1, 2015, through August 30, 2016, regarding Mr. Shaw.

- Request for Production No. 18 (copies of all requests for treatments or medications, denials of the requests including who denied the request and why the denials were issued).

6

Mr. Shaw further explains many of the emails the defendants produced appear to be incomplete because, for example, either the sender or recipient's half of the email string does not appear to have been produced. Mr. Shaw also believes pertinent parts of the emails that were produced have been improperly redacted because many of the pages he received in discovery have had several lines of information "blacked out." Finally, Mr. Shaw explains the defendants did not provide copies of outside medical records or internal X-rays.

**E.    The Defendants' Response To Mr. Shaw's Motion To Compel**

The defendants submitted a brief (Docket 89) in resistance to Mr. Shaw's motion to compel, along with the affidavits of Ann Mines Bailey (Docket 91) and Richard M. Williams (Docket 90). In Ms. Mines-Bailey's and Mr. Williams' affidavits, they explain the eDiscovery process which occurs when the DOC or any of its employees are served with suit papers. In this instance and in accordance with policy, the email accounts of employees Mr. Shaw named in his lawsuit were placed on a "litigation hold" when the Attorney General's office became aware the defendants had been served with suit papers. Docket 91-1, 91-2. This required the named defendants to refrain from deleting or destroying documents (including emails) pertaining to Mr. Shaw. Id. When Mr. Shaw made his discovery requests, the email accounts of the named defendants were searched for the terms "Jim" or "James" and "Shaw." Any email or searchable attachment within the listed mailboxes that contained "Jim" or "James" and "Shaw" was collected. Docket 90, ¶ 10. Attorney Mines-Bailey and co-counsel (Assistant Attorney General Matthew Nasz) reviewed the

7

documents and did not produce those documents not pertaining to Mr. Shaw, or which did pertain to Mr. Shaw, but not matters relevant to this lawsuit. Docket 91, ¶ 7.

The defendants also explain that some emails contained confidential medical information about other inmates. Docket 91, ¶ 9. The other inmates' names were redacted from those documents. Id. They also explain they produced all relevant emails which were captured by their search, but they cannot produce emails which they do not have, which no longer exist, or which never existed in the first place. Docket 91, ¶ 11.

Defendants explain that initially, "hard copies" of X-ray films from Correctional Health Services were inadvertently not included in the medical records produced to Mr. Shaw. Those images were produced to Mr. Shaw, however, on April 24, 2017. Id. ¶ 13. Other, older X-ray films were required to be sent to an outside facility to be reproduced for purposes of production to Mr. Shaw. The defendants represented to the court copies of those films would be sent to Mr. Shaw as soon as they were received by the defendants. The defendants assert they are not in possession of diagnostic films from outside providers, so are not obligated to produce that which they do not possess. See Docket 82, p. 11; Docket 88. Counsel for the defendants also explains that Mr. Shaw's internal medical file has been produced to Mr. Shaw, but his mental health and dental records were not produced because "such records are not considered by Health Services to be part of [Mr. Shaw's] medical file." Docket 91, ¶ 14.

Finally, the defendants explain that because inmates receive instantaneous copies of informal resolution requests & responses, administrative remedy requests & responses, and appeals from administrative remedy responses & responses, Mr. Shaw should already have copies of those items and the defendants should not have to provide him with duplicate copies for litigation purposes.

**ANALYSIS**

**A.  The Defendants Are Not Required to Produce Documents Pre-Dating July 9, 2012**

In several of the discovery requests Mr. Shaw has designated above as those he believes the district court ordered the defendants to produce but which the defendants have not produced, Mr. Shaw has asked for records dating back as far as 2004.  Presumably, the reason for the beginning date of Mr. Shaw's records request is because 2004 is when Mr. Shaw began to experience right knee pain.  See fourth amended complaint (Docket 41) p. 4, ¶ 18.

Mr. Shaw's claims against the defendants, however, are federal civil rights claims.  Such claims are subject to a statute of limitations.  South Dakota has enacted a specific three-year statute of limitations for federal civil rights actions.  See SDCL § 15-2-15.2.  So, applying that statute, Mr. Shaw had three years "after the alleged constitution deprivation has occurred" to bring suit.  See SDCL § 15-2-15.2.  Mr. Shaw filed his lawsuit on July 9, 2015. See Docket entry dated July 13, 2015 (noting the envelope containing his

9

complaint was postmarked July 9, 2015).[1]  Anything that occurred before July 9, 2012, therefore, even if it violated Mr. Shaw's constitutional rights, is not actionable in this lawsuit because the statute of limitations expired on any such cause of action before Mr. Shaw filed suit.  For this reason, the defendants need not produce documents pre-dating July 9, 2012.

**B.     Outside Medical Records and Diagnostic Films**

Next, the defendants have explained that many of the medical records which are the subject of Mr. Shaw's motion to compel (i.e. copies of diagnostic films from outside providers) are not in the defendant's possession.  The defendants are not required to produce that which they do not possess.  On the other hand, if the defendants *possess* the outside medical records but are not producing them because it is not their usual practice to allow inmates to *review* outside medical records for security reasons, the defendants must review the outside records, redact or remove information which presents a security risk (i.e. dates of upcoming outside medical appointments) and produce copies of the outside records to Mr. Shaw.

Counsel's affidavit acknowledges that mental health and dental records have not been produced because those records are maintained separately by CHS and are "not considered by Health Services to be part of Plaintiff's medical file."  Docket 91, ¶ 14.  This court is well aware of DOH policy which specifies that *outside medical records in general* are to be kept in a separate file, and are

---

[1] Federal prisoners are entitled the "mailbox rule" which presumes their filings are complete on the day they are placed into the prison mail system.  See FED. R. APP. P. 4(c) and Grady v. United States, 269 F.3d 913, 918 (8th Cir. 2001).

10

not considered by CHS to be a part of the medical file which the inmate is usually allowed to review. The South Dakota Department of Health (SDDOH) Policy P-H-02A, Release of Medical Records, specifically states that "[b]efore the inmate reviews the chart," staff are to "remove the following: . . . (iii) outside records." This same policy advises inmates if they desire to obtain the release of medical records from "third parties" they should "contact [the] third party to get copies of his/her medical record[.]" This same instruction is repeated in DOC Policy 1.1.E.3 (Offender Access to DOC Records). That policy states in relevant part: "3.E. An offender who requests to review his/her own health records for the time that he/she was incarcerated in a DOC facility shall submit a written request to the Clinical Supervisor (for medical records) or the Clinical Director (for mental health records), indicating the specific portions of the record he/she wants to review. Outside medical records remain the property of the outside provider. Any requests for medical records generated by an outside provider must be directed to the outside provider."[2]

While dental or mental health records are not relevant to Mr. Shaw's pending lawsuit, outside medical records pertaining to the treatment of his knees and spine **are** relevant. That the DOC or DOH does not consider outside medical records in its possession to be part of its internal inmate medical file does not matter. If outside records relevant to Mr. Shaw's pending claims are in the defendants' possession—separate file or not—the defendants must take

---

[2] These policies were provided to the court in the course of a lawsuit brought by Mr. Shaw's jailhouse lawyer, Mr. Cody. See Cody v. Young, et. al., Civ. No. 14-4155, United States District Court, District of South Dakota.

the necessary steps to redact any information which presents a security risk and then produce the records to Mr. Shaw.

**C.    Copies Of Informal Resolution Requests & Responses, Administrative Remedy Requests & Responses, And Appeals From Administrative Remedy Responses & Responses**

The defendants' assertion they should not be required to produce copies of Mr. Shaw's informal resolution requests & responses, administrative remedy requests & responses, and appeals from administrative remedy responses & responses is not well taken. Though in theory Mr. Shaw should have instantaneous copies of these documents from when he either filed them or received the responses from prison authorities, the defendants' record-keeping system is (hopefully) better than Mr. Shaw's. It is likely that over the course of several years and not knowing he would need them for this lawsuit, Mr. Shaw has thrown away or misplaced relevant records. The defendants shall produce to Mr. Shaw copies of all informal resolution requests & responses, administrative remedy requests & responses, and appeals from administrative remedy responses & responses which post-date July 9, 2012, and which are relevant to the issues in the remaining claims of this lawsuit.

**D.    Incomplete/redacted email strings**

Mr. Shaw has requested the court to order unredacted and/or complete email strings. The defendants have explained the email strings that have been produced to Mr. Shaw have been redacted to remove confidential information pertaining to other inmates. The court will not order the defendants to reveal confidential medical information about other inmates which is contained in

12

email strings that refer to Mr. Shaw.  Likewise, counsel for the defendants has represented to the court that the defendants have produced all the emails that exist within the DOC email system which are relevant to Mr. Shaw's claims.  The court cannot order production of documents which do not exist.

**CONCLUSION and ORDER**

Based on the foregoing, it is ORDERED:

The defendants shall, within 10 days of this order, produce to Mr. Shaw:

1. Copies of all medical records and diagnostic films which post-date July 9, 2012 including any medical records and diagnostic films in the possession of the defendants which originated from outside medical providers.  The defendants may redact from outside medical records any information deemed by the defendants to constitute a security risk.

2. Copies of Mr. Shaw's informal resolution requests & responses, administrative remedy requests & responses, and appeals from administrative remedy responses & responses which post-date July 9, 2012 and which pertain to issues relevant to this lawsuit.

3. The balance of Mr. Shaw's motion to compel [Docket 79] is DENIED.

DATED this 16th day of June, 2017.

BY THE COURT:

*Veronica L. Duffy*
VERONICA L. DUFFY
United States Magistrate Judge