UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JAMES ELMER SHAW,<br><br>            Plaintiff,<br><br>   vs.<br><br>**TROY PONTO**, ASSOCIATE WARDEN, INDIVIDUAL AND OFFICIAL CAPACITY; **AL MADSON**, UNIT MANAGER, INDIVIDUAL AND OFFICIAL CAPACITY; **SAM BADURE**, UNIT MANAGER, INDIVIDUAL AND OFFICIAL CAPACITY; **DERICK BIEBER**, UNIT MANAGER, INDIVIDUAL AND OFFICIAL CAPACITY; **JACOB GLASIER**, UNIT COORDINATOR, INDIVIDUAL AND OFFICIAL CAPACITY; **DR. MARY CARPENTER**, M.D. (HEALTH SERVICES), INDIVIDUAL AND OFFICIAL CAPACITY; **DR. EUGENE REGIER**, MD, INDIVIDUAL AND OFFICIAL CAPACITY; **HEATHER BOWERS, RN** (HEATH SERVICES), INDIVIDUAL AND OFFICIAL CAPACITY; **AUDREY SHEDD**, HEAD REGISTERED NURSE, INDIVIDUAL AND OFFICIAL CAPACITY;<br>            Defendants. | 4:15-CV-04121-KES<br><br>REPORT AND RECOMMENDATION<br><br>MOTION FOR TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION [DOCKET 70] |

**INTRODUCTION**

This matter is before the court on plaintiff James Elmer Shaw's *pro se* fourth amended complaint pursuant to 42 U.S.C. § 1983, filed September 12, 2016. See Docket No. 41. Mr. Shaw filed his fourth amended complaint without leave of court and without a stipulation from the defendants, contrary to FED. R. CIV. P. 15(a)(2). It was the third amended complaint, filed by

Mr. Shaw's then attorney, which was distributed with the summonses for service upon the named defendants.  Mr. Shaw, however, was dissatisfied with his then attorney and with the third amended complaint.  Before the defendants' answer was due, Mr. Shaw filed the fourth amended complaint *pro se.*  Mr. Shaw's attorney withdrew from her representation of Mr. Shaw.  Docket 39 & 40.  The defendants did not object to Mr. Shaw's *pro se* fourth amended complaint and when they filed their answer, indicated it was in response to the *pro se* fourth amended complaint.  See Docket 42.

Defendants have now filed their summary judgment motion and in it, as well as their response to this pending motion, along with accompanying documents, they refer to the *pro se* fourth amended complaint.  "It is well established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect."  In Re: Atlas Van Lines, 209 F.3d 1064, 1067 (8th Cir. 2000) (citation omitted).  Mr. Shaw's *pro se* fourth amended complaint is twenty-seven (27) pages long and he made no indication that he intended it to supplement rather than supplant his third amended complaint.  For all purposes, therefore, only the fourth amended complaint is considered by this court.  Mr. Shaw has been granted *in forma pauperis* status and has been allowed to proceed without payment of the partial filing fee.  Docket 13.

The pending matter was referred to this magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and the March 31, 2017, order of the Honorable Karen E. Schreier, district judge.  The court has reviewed Mr. Shaw's motion for

temporary restraining order/preliminary injunction along with his supporting documents, and the defendants' responsive filings. The following is this court's recommended disposition.

## FACTS

**A.     Mr. Shaw's Claims.**

As explained above, Mr. Shaw has filed a fourth amended complaint. This is the result of his previous complaints being screened twice; once by this court and once by the district court. See Docket Nos. 14 and 24. As a result, several parties Mr. Shaw originally named and several of the claims he originally articulated are no longer a part of this lawsuit. The court explains his remaining claims here in a greatly abbreviated form. Mr. Shaw was, at the start of this lawsuit, incarcerated at the South Dakota State Penitentiary. Docket 41 at ¶ 3. In Count One, Mr. Shaw alleges deliberate indifference to his serious medical needs. Beginning in 2004, he complained of knee pain, first in the right knee and eventually in the left knee. Id., ¶¶ 18, 60. He had surgery on his right knee in 2013, but was told that by then the damage was too great and beyond repair. Id. at ¶¶ 52-53. Mr. Shaw had surgery on his left knee on March 9, 2015, but reconstruction of the anterior cruciate ligament was impossible due to the delay. Dr. Kalo told Mr. Shaw he would "have to live with the pain." Id. at ¶ 65. Mr. Shaw believes the medical care he has received for his knee problems has been untimely and inadequate, and that the delay and inadequacy has caused unnecessary pain and suffering, amounting to deliberate indifference to his serious medical needs. Id. at ¶¶ 191-199.

Mr. Shaw also alleges that as a result of untimely and inadequate medical care for his knees, he now suffers from back problems, which he alleges the defendants also treat with deliberate indifference. Id. at ¶ 193. He asks the court to enter an order commanding the defendants to provide him with a CAT scan of his lower back, a neurological consultation, high quality prosthetics and shoes as deemed necessary by outside providers, in addition to compensatory damages for a refund of all co-pays he has paid to prison health services since 2004, his pain and suffering in the amount of at least $350.00 per day from May, 2008, to the present, plus punitive damages in the amount of $250,000 against each named defendant. Id. at pp. 25-26. Mr. Shaw requests a jury trial.

In Count Two, Mr. Shaw alleges the defendants interfered with his constitutional right to receive mail. Docket 41, ¶¶ 161-175, 200-206. Specifically, Mr. Shaw alleges the medical records clerk told him he could review his medical records but that some records (utilization management, mental health, and outside provider records) would be withheld. Id., ¶ 162. Mr. Shaw alleges his inability to review these records prevents him from being able to determine why he has not received treatment recommended by his outside medical providers. Id. at ¶ 163. He also alleges he has not been allowed to review his records because he does not have enough money to do so. Id. at ¶ 165. He alleges he received some but not all outside medical records he requested from CORE Orthopedics. Id. at ¶ 171. Because Mr. Shaw has not been allowed access to records from outside medical providers, he believes mail from outside consultants is being confiscated. Id. at ¶¶ 174-175.

In Count Three, Mr. Shaw alleges a claim for retaliation.  Docket 41, ¶¶ 176-190; 207-214.  Mr. Shaw alleges after he initiated this lawsuit, the defendants took adverse action against him that would chill a person of ordinary firmness from continuing their protected activity.  Id. at ¶ 210.  Namely, the defendants searched Mr. Shaw's cell and placed him in the special housing unit (the "SHU") without cause.  Mr. Shaw alleges the defendants seized and failed to return his property, including his legal materials.  Id. at ¶ 212.

**B.    The Defendants Named in Mr. Shaw's Fourth Amended Complaint**

In his fourth amended complaint, Mr. Shaw named nine defendants, falling into two basic categories:  Mr. Shaw's institutional medical providers and persons within the SDSP who hold supervisory positions.  They are as follows:

| Supervisory defendants: | Medical defendants: |
|---|---|
| Troy Ponto—Associate Warden | Heather Bower, PAC—Dept. of Health Svcs. |
| Al Madsen—Unit Manager | Mary Carpenter, MD—Medical Director |
| Sam Badure--Unit Manager | E.R. Regier, M.D.—Dept. of Health Svcs. |
| Derrick Bieber—Unit Manager | Audry Shedd, R.N.—Dept. of Health Svcs. |
| Jacob Glasier—Unit Coordinator | |

**C.    Mr. Shaw's Request for a Temporary Restraining Order/Preliminary Injunction.**

Mr. Shaw requested a temporary restraining order (TRO) and/or a preliminary injunction pursuant to Fed. R. Civ. P. 65.  Docket 70.  Mr. Shaw asserts the defendants are "attempting to prevent [him] from receiving injunctive and declaratory relief" by transferring him to Mike Durfee State Prison, which is a lower security facility within the state of South Dakota.  Docket 72, ¶ 2.  Because of this belief, Mr. Shaw refused the transfer.  Id.  As punishment for his refusal of a housing assignment, Mr. Shaw was placed in the SHU.  Id.  Mr. Shaw alleges defendant Madsen admitted the attempted

transfer and placement in the SHU were in retaliation for Shaw's filing of the instant lawsuit. Id. at ¶ 4.

Shaw was in the SHU for seven days. Id. at ¶ 10. After his release from the SHU, Mr. Shaw was placed in a cell with an African American inmate. Id. at ¶ 11. Mr. Shaw asserts it is against his religious beliefs to live with a black inmate, and that he told his Unit Manager (UM) Lentsch as much. Id. at ¶12. Mr. Shaw also asserts UM Lentsch refused to place him in a handicapped cell. Id. at ¶ 16. Mr. Shaw asserts the three-man cell where UM Lentsch placed Mr. Shaw after his release from the SHU is unworkable because even in the bottom bunk he cannot use his head-of-the bed wedge, which he needs for his acid reflux. Id. at ¶ 18. Also, the bottom bunk is too low to the ground and causes Mr. Shaw knee pain to get in and out of bed. Id. at ¶ 17. UM Lentsch expressed that he "didn't care" about Mr. Shaw's plight and told Mr. Shaw he could not demand a Caucasian cellmate. Id. at ¶ 21-22. Additionally, after returning from the SHU, Mr. Shaw noticed one of his four boxes of property was missing. Id. at ¶¶ 24-27. Mr. Shaw believes some of his property including artwork, art books, religious books and legal mail was "thrown in the trash" and he received no due process regarding the loss of this property.

Mr. Shaw's motion asks the court to: (1) prevent the defendants from moving Mr. Shaw from the South Dakota State Penitentiary (SDSP) to the lower security facility, Mike Durfee State Prison (MDSP);[1] (2) prevent the past and

---

[1] During the pendency of Mr. Shaw's motion for a TRO/preliminary injunction, the court received notice from all parties that Mr. Shaw had in fact agreed to

threatened future loss of his legal documents; (3) protect Mr. Shaw's ability to communicate with fellow prisoner and "jailhouse lawyer," Mr. William Cody; (4) allow him legal papers while in the SHU; (5) prevent his transfer to MDSP until after this lawsuit is completed; (6) provide him with certain medical services, many of which are the same he has requested in the relief portion of the underlying complaint; (7) require prison officials to honor Mr. Shaw's religious beliefs, which mandate that he not share a cell with a non-Caucasian person; (8) allow him to submit grievances; (9) return his property;  and (10) prevent the taking or destruction of any other property without due process.  See Docket 71, pp. 11-12.

## DISCUSSION

**A.  Legal Requirements For A TRO/Preliminary Injunction.**

Rule 65 of the Federal Rules of Civil Procedure govern the issuance of preliminary injunctive relief and temporary restraining orders.  That rule provides in pertinent part as follows:

> (a)  Preliminary Injunction
>   (1)  *Notice.*  The court may issue a preliminary injunction only on notice to the adverse party.
> * * * *
> (b)  Temporary Restraining Order
>     (1)  *Issuing Without Notice.*  The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>         (A)  specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

---

the transfer to MDSP and defendants have now completed the transfer.  Docket 97 & 98.

7

>    (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

See FED. R. CIV. P. 65.  Temporary restraining orders ("TROs") are limited to a maximum of 14 days' duration.  Id. at (b)(2).[2]  A party moving for a preliminary injunction or TRO must give monetary security in an amount sufficient to pay the costs and damages to any party later found to have been wrongfully enjoined or restrained.  Id. at (c).

In order to obtain preliminary injunctive relief, Mr. Shaw is required to show (1) a likelihood of success on the merits, (2) that he will suffer irreparable harm in the absence of preliminary injunctive relief, (3) that the balance of equities tips in his favor, and (4) an injunction is in the public interest.  Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008); Dataphase Systems v. C.L. Systems, 640 F.2d 109, 114 (8th Cir. 1981).

**B.     Mr. Shaw's Claims Do Not Meet the Requirements for A TRO/Preliminary Injunction**

Applying Rule 65 and the Winter/Dataphase factors, Mr. Shaw has not shown an entitlement to either form of preliminary relief.  First, as discussed below, Mr. Shaw has not alleged facts sufficient to tip the balance of the four factors in his favor.  Second, he has not posted monetary security as required by Rule 65.  Though Mr. Shaw asks for a waiver of the duty to post bond, he has not cited any authority for such a waiver.

---

[2] Because the relief Mr. Shaw seeks clearly exceeds 14 days and because the defendants have received notice and filed a response, the court construes Mr. Shaw's motion as one for a preliminary injunction pursuant to FED. R. CIV. P. 65(a).  Baker Elec. Co-op., Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994).

"The burden of proving that a preliminary injunction should be issued rests entirely with the movant." Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995). Whether a preliminary injunction should issue is decided by weighing four factors (the "Dataphase" factors). No single factor is determinative. "However, a party moving for preliminary injunction is ***required*** to show the threat of irreparable harm." Baker Elec. Co-op., Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994) (citations omitted, emphasis added).

In the prison setting a request for a preliminary injunction "must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." Goff, 60 F.3d at 520 (citations omitted, punctuation altered).

**1.     Threat of Irreparable Harm**

In Goff, the Eighth Circuit emphasized that to show the threat of irreparable harm, an inmate must do more than merely speculate about what might happen. "[F]or an injunction to issue a right must be violated and . . . the court must determine whether a cognizable danger of future violation exists and that danger must be more than a mere possibility. . . the courts should not get involved unless either a constitutional violation has already occurred or the threat of such a violation is both real and immediate." Goff, 60 F.3d at 521. Additionally, in Devose v. Herrington, 42 F.3d 470 (1994) (*per curium*), the court explained that

> A court issues a preliminary injunction in a lawsuit to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits . . . Thus, a party moving for a preliminary injunction must necessarily establish a

9

>  relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.

Id.

In support of this factor, Mr. Shaw asserts defendants' decision to transfer him to MDSP was not made in accordance with DOC policy "which is prohibited by legal precedent." Docket 71, p. 5. The defendants submitted the affidavits of Troy Ellis (Docket 87) and Al Madsen (Docket 86), which explain the decision to transfer Mr. Shaw and the punishment he received for his initial refusal to transfer were both decisions made in conformance with the usual protocol at SDSP. But even assuming those decisions were not made according to policy, the failure to follow an institutional or state policy does not amount to a constitutional violation. A violation of an internal policy, state law or regulation is not a per se constitutional violation and does not in and of itself state a claim under 42 U.S.C. § 1983. Ebmeier v. Stump, 70 F.3d 1012, 1013 (8th Cir. 1995); Fultz v. Whittaker, 261 F.Supp.2d 767, 782 (W.D. Ky. 2003).

The appropriate question is not whether an administrative provision was violated, but whether the Constitution was violated. This is because government agencies are free to hold their officials to higher standards than the Constitution requires. Cole v. Bone, 993 F.2d 1328, 1334 (8th Cir. 1993). In the absence of a constitutional violation, Mr. Shaw does not sufficiently explain how a policy violation causes him irreparable harm. See, e.g. Schrier v. University of Colorado, 427 F.3d 1253, 1267 (10th Cir. 2005) (the purpose of a preliminary injunction is not to remedy past harm but to protect plaintiff from

10

irreparable injury that "will surely result"; irreparable harm requirement is met if plaintiff proves he will experience harm that cannot be compensated after the fact by monetary damages but speculative harm does not amount to irreparable injury).

Mr. Shaw additionally opines that his transfer to MDSP will ruin his chances of prevailing in the underlying lawsuit, because transfer to another prison can render his requests for injunctive relief moot, citing Randolph v. Rogers, 253 F.3d 342, 345-46 (8th Cir. 2001). But as explained in Randolph, if the named defendant has power over the entire corrective system and can still enforce the injunctive relief sought by the prisoner, then the prisoner's claims may still proceed despite a transfer to a different facility during the pendency of the lawsuit. Randolph, 253 F.3d at 346. The court notes the person who has the ability to grant some, if not all, of the prospective injunctive requests contained in Mr. Shaw's underlying complaint (a CAT scan of his lower back, a neurological consultation, high quality prosthetics and shoes as deemed necessary by outside providers) is Dr. Mary Carpenter. In her summary judgment affidavit, Dr. Carpenter avers she is the medical director not just for the SDSP, but for correctional health. See Docket 58, ¶ 3. Mr. Shaw has presented no evidence that his transfer to MDSP will diminish Ms. Carpenter's ability to grant his requests for appropriate medical care should he prevail on the merits of the underlying suit. And finally, Mr. Shaw's damage claims are not mooted by his transfer. Boag v. MacDougall, 454 U.S. 364 (1982) (*per curiam*).

11

Likewise, Mr. Shaw asserts being housed with a non-Caucasian cellmate will cause him irreparable harm. Docket 71, p. 6. This claim is wholly insufficient to grant a preliminary injunction. Though Mr. Shaw asserts living with a non-Caucasian person violates/substantially burdens his religious beliefs, the Eighth Circuit and other courts have held that even if such a belief is sincere, the DOC's interests in upholding the Constitution and the equal protection rights of other prisoners prevails. Ochs v. Thalacker, 90 F.3d 293, 296-97 & n. 3 (8th Cir. 1996) (noting the relief the prisoner requested would violate the country's public policy of against racial segregation –though the prisoner was free to hold such beliefs he could not compel prison administrators to accommodate them through actions that could put the prison in conflict with federal and state law and policy); Walker v. Beard, 789 F.3d 1125, 1136-37 (9th Cir. 2015) (state prison not required to honor Aryan Nation member's request to not be celled with persons of a different race); Lindell v. Houser, 442 F.3d 1033, 1035-36 (7th Cir. 2006) (state prison not required to honor Asatru prisoner's request to be housed with members of his own race). Whatever harm Mr. Shaw believes he may suffer, therefore, should he be housed with a non-Caucasian person (either at the SDSP or MDSP) it is neither cognizable nor irreparable in the constitutional sense.

Next, Mr. Shaw asserts the transfer to MDSP will harm him irreparably because he will no longer be able to use the services of his "jailhouse lawyer," Mr. William Cody. The defendants counter that the MDSP, like the SDSP, provides inmates with the services of a contract attorney and a law library. See

12

declaration of Arthur Allcock, Docket 84, ¶ 10.  There is no freestanding constitutional right to the services of a "jailhouse lawyer" such as Mr. Cody, separate and apart from an inmate's constitutional right of access to the courts.  Gassler v. Rayl, 862 F.2d 706, 708 (8th Cir. 1988).  Therefore, the transfer of the recipient of the legal assistance, no less than the transfer of the jailhouse lawyer, is unconstitutional "insofar [only] as inmates are left without meaningful access to the court." Id.  Though Mr. Shaw would no doubt prefer to have Mr. Cody's assistance, he only speculates the services of the contract attorney and/or the MDSP law library will be insufficient to provide him with meaningful access to the courts (i.e. prevent irreparable harm).  In sum, Mr. Shaw has failed to sufficiently allege a threat of irreparable harm in the absence of a preliminary injunction.

### 2. Balance Between Harm and Injury to Other Parties Litigant

Mr. Shaw essentially requests the Court preliminarily grant him the relief he requests in the underlying complaint and to act as a referee regarding the prison's disciplinary and administrative authority over him during the pendency of this lawsuit.  He has failed to show how he will be harmed (irreparably or otherwise) in the absence of a preliminary injunction which prohibits his transfer to a lower security facility or the imposition of normal prison rules regarding cellmate assignments or the taking or return of inmate property upon disciplinary action against him after assignment to the SHU.  Prison officials would essentially be required to obtain permission from the

federal courts before imposing disciplinary sanctions and/or transferring Mr. Shaw until this lawsuit has concluded.

The defendants would be put to great disadvantage in the "complex and intractable problems of prison administration" should they be required to deal with one inmate differently than all the others regarding transfer, cell assignment and disciplinary matters.  Goff v. Harper, 60 F.3d 518, 521 (8th Cir. 1995).

### 3. Probability of Success on the Merits

Mr. Shaw addresses this factor at some length in his brief.  "The burden of proving that a preliminary injunction should be issued rests entirely with the movant." Goff, 60 F.3d at 520.  Essentially, Mr. Shaw argues that because this court and the district court found the claims which now remain were sufficient to withstand screening pursuant to 28 U.S.C. § 1915, he is likely to prevail on the merits.  Mr. Shaw misunderstands.  The question on screening is merely whether the complaint "states any valid claim for relief." Karstens v. International Gamco, Inc., 939 F.Supp. 1430, 1438 (D. Neb. 1996).  More is required, however, to survive summary judgment or prevail at trial.  To survive summary judgment or prevail at trial, a plaintiff must present *admissible evidence* sufficient to support the claims in his complaint and to prevail on the merits.  FED. R. CIV. P. 56.  That his claims were sufficient to state a claim upon which relief could be granted on screening does not equate to a finding that he will prevail at the summary judgment stage or at trial.

Defendants have filed a summary judgment motion; Mr. Shaw has not responded to the motion, but has asked the court to compel the defendants to produce other evidence (Docket 79), and requested more time to respond to pending motions. (Docket 73 ).  He also has filed a third motion requesting assistance of counsel (Docket 76). [3]  At this stage of the litigation,  Mr. Shaw has not shown a probability of success on the merits.

### 4.     Public Interest

Mr. Shaw has failed to identify any public interest in this court's oversight of his prison administrative or transfer proceedings.

> [I]n the context of a motion impacting on matters of prison administration, the interests of  . . . the public at large weigh against the granting of an injunction.  Any interference by the federal courts in the administration of state prison matters is necessarily disruptive.  The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights.

McCreary v. Wertanen, 2009 WL 1873997  at *2 (W.D. Mich., May 5, 2009). Similarly, in the absence of a showing his constitutional rights have been or are being violated, Mr. Shaw has failed to show a public interest in his requested preliminary injunction.

### CONCLUSION AND RECOMMENDATION

Based on the foregoing, it is respectfully recommended to the district court that Mr. Shaw's motion for a temporary restraining order/preliminary injunction [Docket 70] be DENIED.

---

[3]All of these various motions will be addressed in subsequent orders.

**NOTICE TO PARTIES**

Mr. Shaw has fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 16th day of June, 2017.

BY THE COURT:

_____
VERONICA L. DUFFY
United States Magistrate Judge